IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIEGO GUTIERREZ PINALES,<br>    #41066-279,<br>        MOVANT, | §<br>§<br>§<br>§ | |
| v. | § | CIVIL CASE NO. 3:22-CV-2152-N-BK |
| | § | (CRIMINAL CASE NO. 3:18-CR-519-N-19) |
| UNITED STATES OF AMERICA,<br>        RESPONDENT. | §<br>§ | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Movant Diego Gutierrez Pinales' *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition where appropriate. As detailed here, the § 2255 motion should be **DENIED**.

**I. BACKGROUND**

In 2018, Gutierrez Pinales ("Pinales") was charged by indictment with conspiring to possess with intent to distribute at least 500 grams or more of cocaine—which carried a statutory imprisonment range of 5-40 years. Crim. Doc. 491.[1] In February 2020, pursuant to a plea agreement, he pled guilty to a superseding information charging him with the lesser-included offense of conspiracy to possess with intent to distribute cocaine, with a statutory imprisonment range of 0-20 years. Crim. Doc. 489; Crim. Doc. 508. In 2021, the Court sentenced Pinales in

---

[1] All "Crim. Doc." citations refer to the related criminal case, *United States v. Gutierrez Pinales*, No. 3:18-CR-519-N-19 (N.D. Tex.).

the middle of the 108-135 guideline range to 120 months' imprisonment.  Crim. Doc. 731.  His direct appeal was subsequently dismissed as frivolous.  Crim. Doc. 811.

Pinales has timely filed the instant § 2255 motion with brief in support, asserting ineffective assistance of counsel at sentencing.  Doc. 1 at 4-8; Doc. 2 at 6-15.  The Government opposes § 2255 relief, Doc. 8, and Pinales has filed a reply, Doc. 9.

Upon review, the Court concludes that Pinales has failed to establish ineffective assistance of counsel.  Thus, his § 2255 motion should be denied.

**II. ANALYSIS**

To succeed on an ineffective-assistance-of-counsel claim, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Failure to establish either deficient performance or prejudice defeats the claim.  *Id.* at 697.

To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  The proper measure of attorney performance is reasonableness under prevailing professional norms.  *Id*. at 688.  That said, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id.*  Moreover, to prove prejudice in the sentencing context, the movant must demonstrate that the sentence was increased by the deficient performance of defense counsel.  *Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001).

**A. Failure to properly object to drug quantity calculation**

Pinales asserts that defense counsel rendered ineffective assistance in failing to properly challenge the drug quantity at sentencing. Doc. 1 at 4. He contends that "the quantity of cocaine reasonably foreseeable to him was less than five kilograms," which would have limited his sentencing exposure to 5-40 years and permitted a five-year mandatory minimum sentence. Doc. 2 at 6-7. Pinales states that paragraph 17 of the Presentence Report (PSR) confirms that he personally sold only two kilograms of cocaine and that "[t]his [was] the only foreseeable evidence against [him] and attributable against his sentence." Doc. 9 at 3. He thus faults counsel for "expos[ing]" to the Court at sentencing that he had admitted to distributing 12 kilograms in the Factual Resume and that the PSR held him accountable for distributing 15 kilograms. Doc. 1 at 4; Doc. 9 at 3.

Pinales adds that counsel "ignored" his attempts, during plea negotiations, to limit his sentencing exposure to less than 5 kilos. Doc. 2 at 7. He asserts that his sworn statements at re-arraignment were "false," but that he "voluntarily and intelligently accepted responsibility in Count One of the Superseding Information" and therefore he is not "contest[ing] the validity of his plea agreement." Doc. 2 at 7.

To the extent Pinales challenges the stipulations in the Factual Resume, his assertions are unsupported and belied by the record, including his previous sworn testimony at re-arraignment. Pinales affirmed under oath at re-arraignment that he had reviewed the Factual Resume in detail with counsel before signing it, that the stipulated facts contained were true, and that he understood them. Crim. Doc. 753 at 17-18. In the Factual Resume, Pinales stipulated that: (1) he was "responsible for providing ten kilograms of cocaine to Benjamin Gutierrez for further distribution during the course of the conspiracy"; (2) he "sold two kilograms of cocaine [to] the

purchaser for $29,000 per kilogram"; and (3) he "distributed kilogram quantities of cocaine to the Gutierrez organization that was further distributed in the Northern District of Texas and elsewhere." Crim. Doc. 493 at 2-3. The Factual Resume executed by Pinales also states:

> The defendant agrees that he committed all the essential elements of the offense. This factual resume is *not intended to be a complete accounting of all the facts and events related to the offense charged in this case*. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Superseding Information.

Crim. Doc. 493 at 3 (emphasis added).

Pinales offers no credible evidence to rebut the record. "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) (noting movant must produce "independent indicia of the likely merit of [his] allegations" to overcome re-arraignment testimony and plea agreement, which refuted his allegations). Pinales also had ample time—more than 14 months between his guilty plea and the sentencing hearing—to contest the stipulations in the Factual Resume, but he did not do so. And at sentencing, he only expressed remorse and apologized for his conduct. Crim. Doc. 752 at 3.

Pinales' claim that counsel was ineffective in failing to properly challenge the drug quantity likewise fail. First, he is mistaken in arguing that he was responsible for only the two kilograms of cocaine that he personally distributed. As noted, Pinales stipulated to distributing at least 12 kilograms of cocaine; based on the agents' investigation, he was found to be "a cocaine source of supply" for the Gutierrez organization. Crim. Doc. 538-1 at 7. The PSR thus properly held him "accountable for a conservative 15 kilograms of cocaine." Crim. Doc. 538-1 at 7.

Second, Pinales fails to show deficient performance or prejudice because his counsel cannot be considered ineffective for failing to make a meritless objection challenging the drug amount. *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000). Consequently, Pinales ineffective assistance claim lacks merit.

Pinales also raises a claim based on *Alleyne v. United States*, 570 U.S. 99 (2013), which addressed increases in mandatory minimum sentences. Doc. 2 at 7. He argues again that he would have faced a five-year mandatory minimum sentence if he had been held accountable for less than five kilograms. Doc. 2 at 7. He is again mistaken, however. As noted, Pinales initially faced a statutory range of 5-40 years, but his counsel successfully negotiated a plea deal that lowered his statutory range to 0-20 years. Crim. Doc. 753 at 16. The Court then sentenced Pinales to 120 months based on the application of the Sentencing Guidelines not a mandatory minimum sentence. *See United States v. Leontaritis*, 977 F.3d 447, 451 (2020) (approving a sentencing judge's fact-finding on relevant conduct proven by a preponderance of the evidence as long as it increases only the discretionary, sentencing guidelines range). The offense of conviction in this case carried *no* statutory minimum sentence, and Pinales' argument that he should have been subjected to the *higher* statutory range is simply nonsensical. Thus, Pinales' *Alleyne* claim that his mandatory minimum sentence was erroneously increased likewise fails.

### B. Failure to seek safety valve relief

Second, Pinales contends counsel was ineffective for failing to seek relief under the safety valve. Doc. 1 at 5; Doc. 2 at 9-10. He relies once more on the false premise that a mandatory-minimum sentence of 120 months applied. Doc. 2 at 9. It did not. Pinales also states

that he is entitled to a two-level reduction in offense level under the Sentencing Guidelines. Doc. 9 at 4. However, that argument likewise fails.

A defendant who meets the safety valve criteria receives a two-level reduction under U.S.S.G. § 2D1.1(b)(18), even if, as in this case, the offense does not carry a mandatory minimum sentence. See *United States v. Matias*, 465 F.3d 169, 171-72 (5th Cir. 2006). Even so, Pinales' possession of a firearm in connection with his offense, as discussed below, precluded his eligibility for the safety valve under U.S.S.G §§ 2D1.1(b)(18) and 5C1.2(a). See 18 U.S.C. § 3553(f)(2); *United States v. Fluca*s, 99 F.3d 177, 179 (5th Cir. 1996) (firearm possession disqualifies defendant from being eligible for the safety valve provision of U.S.S.G. § 5C1.2). Further, contrary to his assertion, the First Step Act expanded only the number of criminal history points for safety valve eligibility; defendants who possess a firearm or other dangerous weapon remain ineligible for a safety valve reduction. 18 U.S.C. § 3553(f)(1)-(2); U.S.S.G. § 5C1.2(a)(1)-(2).

### C. Failure to dispute firearm enhancement

Third, Pinales asserts that counsel rendered ineffective assistance in failing to properly dispute the firearm enhancement under U.S.S.G. § 2D1.1(b)(1). Doc. 9 at 6. He contends that "the possession of a firearm or a dangerous weapon needs to be related to the drug crime" and, in his case, no firearm was connected to the actual offense for which he was convicted and thus the enhancement was improper. Doc. 9 at 5-7. He argues that the enhancement was based on his possession of a handgun when he was first arrested but "no drugs were found in his car" and "[t]there was no evidence that he [had] used or exhibited a firearm during [or] in [a] drug

transaction[.]" Doc. 9 at 5-6. Pinales also argues that the firearm in the car of a co-conspirator was "not reasonable or foreseeable to [him]." Doc. 9 at 5-6. Pinales' contentions are unavailing.

Counsel objected to the two-level firearm enhancement in the PSR. Crim. Doc. 544 at 1-2. He maintained Pinales was licensed to carry a firearm and he never used or exhibited the weapon during any illegal activity. Crim. Doc. 544 at 1-2. However, the facts reported in the Addendum to the PSR and adopted by the sentencing court supported the firearm enhancement:

> Pursuant to USSG §2D1.1(b)(1), comment. (n.11), "The enhancement for weapon possession in subsection (b)(1) reflects the danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example … 'an unloaded hunting rifle in the closet.'" In this case, the defendant had a loaded handgun in his vehicle along with three cellular phones, with at least one being connected to the drug trafficking conspiracy. Therefore, it is not clearly improbable that the firearm was not connected to the offense. Additionally, as noted in paragraph 17 of the Presentence Report, another handgun was in the possession of unindicted coconspirators in the drug trafficking conspiracy directly after an interaction with the defendant. In *United States v. Aguilera-Zapata*, 901 F.2d 1209 (5th Cir. 1990), the Court noted the guidelines hold a defendant responsible for all reasonably foreseeable acts of the conspiracy, including when another individual involved in the commission of an offense possessed a weapon. "Because firearms are 'tools of the trade' in drug conspiracies, one co-conspirator's possession of a firearm will ordinarily be foreseeable to another co-conspirator." *United States v. Allen*, 232 F.3d 208, 208 (5th Cir. 2000) (citing *United States v. Mergerson,* 4 F.3d 337, 350 (5th Cir. 1993)). Therefore, based on a firearm being present on at least two separate occasions, the defendant's possession of a loaded firearm, his direct involvement with the distribution of narcotics, possession of three cellular phones with one or more being linked to the conspiracy, and the presence of a firearm by another unindicted coconspirator, firearms were reasonably foreseeable in this drug conspiracy, pursuant to USSG §§1B1.3(a)(1) and 2D1.1(b)(1), and the defendant was in possession of a firearm warranting a two-level enhancement.

Crim. Doc. 546-1 at 1-2.

At sentencing, counsel restated his firearm-enhancement objection. Crim. Doc. 752 at 2. The government responded that (1) Pinales was arrested with a gun and his drug phones and (2) when he sold two kilograms of cocaine a loaded weapon was present. The Court accepted the

PSR and Addenda and overruled counsel's objections "for the reasons stated by the Government as well as the addendum." Crim. Doc. 753 at 5.

Even assuming defense counsel did not properly object to the firearm enhancement, Pinales cannot show that he was prejudiced—to-wit, that counsel's alleged deficient performance resulted in him receiving a higher sentence. *See Glover*, 531 U.S. at 200, 203-04. As supported the circuit precedent cited in the Addendum, Pinales was correctly found to be in possession of a firearm. His ineffective assistance claim therefore has no merit.

### D. Failure to request a third point for acceptance of responsibility

Pinales' fourth ground—that counsel was ineffective for failing ensure that he received a third point for acceptance of responsibility—likewise falls flat. The PSR reveals that Pinales received a three-level reduction for acceptance of responsibility. Crim. Doc. 538-1 at 9, ¶ 35-36.

### E. Failure to dispute sentencing disparity

In his last ground, Pinales asserts that he received ineffective assistance because his counsel did not seek a lower sentence based on the sentencing disparity between himself and the similarly situated defendants. Doc. 2 at 14-15. He identifies a few co-conspirators who received lower sentences and who he claims were similarly situated. Doc. 2 at 14. He also notes that he was neither "the most culpable" nor an "organizer," and "played no 'aggravating' role in the conspiracy," but the PSR "recommended a harsher sentence than his co-conspirators in the same case." Doc. 2 at 14-15. Then, in his reply, Pinales admits that he lacks proper documentation for his claim and so requests that the government be ordered to disprove his sentencing-disparity claim. Doc. 9 at 8 ("The government has the resources to

disproof [sic] [] argument by providing documentation that none of his codefendants were similarly situated."). This claim also lacks merit.

A district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See Gall v. United States*, 552 U.S. 38, 54 (2007) (quoting 18 U.S.C. § 3553(a)(6)). But the disparity factor focuses only on "similarly situated defendants nationwide" and "does not require the district court to avoid sentencing disparities between co-defendants who might not be similarly situated." *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010) (per curiam).

Pinales makes only insufficient conclusory allegations and fails to demonstrate with specificity what favorable evidence would have been found or how it would have resulted in a lower sentence for him. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."). That said, the record does not support Pinales' argument that counsel was deficient or that Pinales was prejudiced as a result of counsel's failure to object or move for an offense-level or sentence reduction on the basis of unwarranted sentencing disparity. Thus, any motion or objection would have been futile.

At sentencing, the Court expressly considered the degree of Pinales' involvement in the conspiracy, including the quantity of drugs he handled and his position within the conspiracy. As explained in the PSR, Addendum, and the government's arguments at sentencing, Pinales was "one of the sources of supply in this organization." Crim. Doc. 752 at 6. He communicated with B. Gutierrez 437 times over a three-month period. Crim. Doc. 546-1 at

2. He was not "a mere drug courier." Crim. Doc. 546-1 at 2. Rather, he "was a partner with an unindicted conspirator, had at least two unindicted coconspirators who took direction from him, and had his own customer base outside of B. Gutierrez." Crim. Doc. 546-1 at 2. Based on the quantity of cocaine for which he was responsible, Pinales was "in the upper half of this organization." Crim. Doc. 752 at 6. Thus, contrary to his argument, Pinales was "not substantially less culpable than multiple other co-defendants" in the cocaine-trafficking conspiracy. Crim. Doc. 752 at 6.

### III. CONCLUSION

Pinales has failed to demonstrate deficient performance or prejudice. Therefore, this ineffective assistance claims fail. Accordingly, Pinales' § 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on November 22, 2023.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).